# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

KIRK DRAPER and LAURIE DRAPER,

    Plaintiffs,

vs.

WELLMARK, INC.,

    Defendant.

No. 06-CV-24-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*    *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*   *JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.*   *FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*V.*     *STANDARD FOR SUMMARY JUDGMENT* . . . . . . . . . . . . . . . . . . . . . *6*

*VI.*   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
     *A.*     *Count I - ERISA Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
          *1.*     *The term "calendar year"* . . . . . . . . . . . . . . . . . . . . . . *8*
          *2.*     *Applicability of contractual limitations provision* . . . . . . . . . *10*
          *3.*     *Waiver* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*
          *4.*     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *14*
     *B.*     *Count II - Negligent Misrepresentation Claim* . . . . . . . . . . . . . . *14*
          *1.*     *ERISA preemption* . . . . . . . . . . . . . . . . . . . . . . . . . . *14*
          *2.*     *Section 514(a)'s "express" preemption* . . . . . . . . . . . . . . *16*
               *a.*     *Express reference* . . . . . . . . . . . . . . . . . . . . . . *16*
               *b.*     *Connection with ERISA plan* . . . . . . . . . . . . . . . . . *17*
          *3.*     *Section 502(a)'s remedial scheme preemption* . . . . . . . . . . . *19*

*VII.*   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *19*

## I. INTRODUCTION

The matter before the court is Defendant Wellmark, Inc.'s Motion for Summary Judgment ("Motion") (docket no. 26).

## II. RELEVANT PROCEDURAL HISTORY

On February 10, 2006, Plaintiffs Kirk Draper and Laurie Draper ("Drapers") filed a two-count Complaint against Defendant Wellmark, Inc. ("Wellmark"). Count I alleges a violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Count II alleges common law negligent misrepresentation.

On June 21, 2006, Wellmark filed the instant Motion. On July 12, 2006, the Drapers filed a resistance to the Motion ("Resistance"). On August 18, 2006, Wellmark filed a reply ("Reply").

Neither party requested oral argument. The court finds oral argument is unnecessary to the determination of the Motion. It shall turn now to consider the Motion.

## III. JURISDICTION

The court has federal question subject matter jurisdiction over Count I pursuant to 28 U.S.C. § 1331, because the Drapers' claim for benefits arises under ERISA. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court finds it has supplemental jurisdiction over the Drapers' common law claim pursuant to 28 U.S.C. § 1367. *See id.* § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."). *But see id.* § 1367(c) (granting district court discretion to decline to exercise supplemental jurisdiction over state law claims under certain circumstances). The court has jurisdiction to review each of the Drapers' claims.

## IV. FACTUAL BACKGROUND

Viewing the facts in the light most favorable to the Drapers, as the law requires, *see Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)), the court finds the following facts for purposes of the Motion:

Prior to February 10, 2003, Kirk Draper was employed by OPN, Inc., d/b/a Midland OPN Architect ("OPN"). Kirk Draper was a participant in OPN's employee welfare benefit plan ("Plan"), and Laurie Draper was a beneficiary of the Plan. The Plan is governed by ERISA.

As part of the Plan, OPN offered a health benefit for its eligible employees. OPN purchased a group insurance policy from Wellmark, which served as the insurer and claim administrator of the health benefit portion of the Plan.

The health benefits available under the Plan are set forth in an Alliance Select Benefits Certificate ("Certificate"). The Certificate provides, in part:

> **Legal Action**
> You may not start legal action regarding a claim that [Wellmark has] denied under this [C]ertificate unless you have exhausted the appeal process . . . .
>
> No legal or equitable action may be brought against [Wellmark] because of a claim under this [C]ertificate, or because of the alleged breach of this [C]ertificate, more than two years after the end of the calendar year in which the services or supplies were provided.

Defendant's Appendix, at 43 (emphasis in original). The term "calendar year" is not defined in the Certificate. Section 5 of the Certificate sets forth the "Appeal Procedure" and the "External Review" procedure. Section 7 of the Certificate provides information about rights under ERISA.

In June of 2002, Laurie Draper had an MRI, which revealed a spinal cord tumor. After the tumor was discovered, Laurie Draper was referred to a local neurosurgeon, who referred her to a doctor at the Mayo Clinic and a doctor at The University of Iowa Hospitals and Clinics. When Laurie Draper met with the specialist at the Mayo Clinic, she learned that her tumor was exceedingly rare. The Mayo Clinic specialist had only seen twelve cases like hers in his twenty-year career.

Eventually, the Drapers were referred to Dr. Paul C. McCormick, M.D., of Neurosurgical Associates, P.C., in New York, New York. Dr. McCormick's specialty is neurosurgery involving spinal cord tumors in adults. The Drapers had a consultation with Dr. McCormick, and they determined that they wanted him to perform the surgery.

After having a consultation with Dr. McCormick, the Drapers met with their insurance representative at TrueNorth Companies, L.C. ("TrueNorth"), in Cedar Rapids. The purpose of this meeting was to determine the out-of-pocket cost for the surgery by Dr. McCormick, since he was an out-of-network doctor. The TrueNorth representative told the Drapers that they would have to pay the first $1,000 for a deductible, as well as 30% co-insurance on the rest of the surgery costs, with an out-of-pocket maximum of $3,000. This cost, along with the cost of traveling to New York and staying there for the recovery period, was the cost the Drapers were prepared to pay in order for Dr. McCormick to perform the surgery.

After meeting with the TrueNorth representative, Laurie Draper then called a Wellmark representative to obtain precertification for the surgery. The Wellmark representative told Laurie Draper that Dr. McCormick was a "non-participating" doctor. The Wellmark representative provided Laurie Draper with information about costs that was consistent with the information the TrueNorth representative had given the Drapers.

The Drapers asked for the cost information in writing, but never received any cost information in writing from TrueNorth or Wellmark.

On February 10, 2003, Dr. McCormick performed neurosurgery on Laurie Draper and removed her spinal cord tumor.

The "billed charges" for the surgery totaled $22,860.00. Wellmark processed Laurie Draper's claim for benefits regarding the surgery. Wellmark's settlement with Dr. McCormick was in the amount of $8,747.20. Such an insurance settlement left the Drapers owing $14,112.80 to Dr. McCormick.

In a letter dated July 28, 2003, and signed by Kirk Draper, Laurie Draper appealed Wellmark's initial settlement determination.

On September 29, 2003, after reviewing the appeal, Wellmark Special Inquiries representative Janet Nicolino sent a letter to the Drapers. Nicolino notified Laurie Draper that Wellmark was upholding the initial determination. The letter also provided:

> You have now exhausted your administrative review, however, if you still do not agree with our determination, and if you have employer group coverage subject to the Employee Retirement Income Security Act (ERISA), you have the right to bring civil action under Section 502(a) of ERISA.

Defendant's Appendix, at 100.

In an undated letter that was received by Wellmark on October 8, 2003, Kirk Draper requested copies of all documents relevant to the initial determination and appeal. In a letter dated October 16, 2003, Nicolino informed Laurie Draper that she was enclosing four documents, pursuant to Kirk Draper's request. The Drapers claim they never received copies of the documents.

On July 12, 2005, the Drapers' attorney, Mark Seidl, sent Nicolino a letter and requested a further explanation about the initial determination and appeal.

On August 4, 2005, Nicolino sent a letter to Attorney Seidl. Wellmark refused to provide Attorney Seidl with information regarding Laurie Draper, due to the requirements of the Health Insurance Portability and Accountability Act ("HIPPA").

On August 17, 2005, Wellmark received Laurie Draper's HIPPA authorization, which permitted it to disclose Laurie Draper's health care information to Attorney Seidl.

In a September 15, 2005 letter, Nicolino wrote Attorney Seidl and further explained the "position of Wellmark" on Laurie Draper's claim.

In a December 19, 2005 letter, Attorney Seidl contacted Nicolino and questioned how Wellmark arrived at the "maximum allowable fee" for the February 10, 2003 surgery.

On February 1, 2006, Nicolino emailed Attorney Seidl. The email provided, in part:

> Mr. Seidl, I am in receipt of your December 19, 2005, letter. I am in the process of gathering the information together that explains how the February 10, 2003, claim for Laurie Draper was priced by Wellmark. I anticipate having a final response prepared in the next 7-10 days.

Plaintiff's Appendix, at 29.

In a February 10, 2006 letter, Nicolino further explained the "position of Wellmark" to Attorney Seidl.

On the same date, February 10, 2006, the Drapers filed their Complaint.

## V. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when a 'reasonable jury could return a verdict for the nonmoving party.'" *Friends of the Boundary Waters Wilderness v. Bosworth*, 437 F.3d 815, 821 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it is a fact that "'might affect the outcome of the suit under the governing law . . . .'" *Mershon v. St. Louis Univ.*, 442 F.3d

6

1069, 1073 (8th Cir. 2006) (quoting *Anderson*, 477 U.S. at 248). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery*, 450 F.3d at 820.

Procedurally, the moving party "'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.'" *Heisler v. Metro. Council*, 339 F.3d 622, 631 (8th Cir. 2003) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986), in turn quoting Fed. R. Civ. P. 56(c)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see, e.g., Baum v. Helget Gas Prods., Inc.,* 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.,* 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.,* 318 F.3d 803, 809 (8th Cir. 2003)).

## *VI. ANALYSIS*

Wellmark argues it is entitled to summary judgment on both counts. It argues summary judgment is appropriate on Count I, the ERISA claim, because the Certificate includes a two-year limitation period, which expired prior to the time the Drapers filed their Complaint. Wellmark argues it is entitled to summary judgment on the

7

misrepresentation claim both because it is preempted by ERISA and because of the limitations clause.

The Drapers argue first that Count I survives summary judgment because the Complaint was filed within the limitations period. Alternatively, they argue that Wellmark waived the limitation provision by continuing to review and investigate Laurie Draper's claim until February 10, 2006. Finally, the Drapers argue that the misrepresentation claim is not preempted by ERISA, because it does not pertain to the improper calculation or processing of benefits.

Both parties cite to Iowa law in their briefs and, therefore, implicitly agree that Iowa law is applicable to the dispute.

### *A. Count I - ERISA Claim*

The Certificate includes a contractual limitations period, which provides the following:

> No legal or equitable action may be brought against [Wellmark] because of a claim under this [C]ertificate, or because of the alleged breach of this [C]ertificate, more than two years after the end of the calendar year in which the services or supplies were provided.

Defendant's Appendix, at 43.

#### *1. The term "calendar year"*

The Drapers contend that the Certificate's limitations period is ambiguous because the phrase "calendar year" is undefined. The Drapers contend that the ordinary meaning of the term "calendar year" means "a one-year period from a certain date to a certain date." They claim the "commencement" of the calendar year is February 10, 2003, and that "two years after the end of the calendar year would be February 10, 2006." The court is perplexed by the Drapers' mathmatical calculation and disagrees that the provision is ambiguous.

8

The insurer has a "duty to define any limitations . . . clauses in clear and explicit terms." *Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775, 778 (Iowa 2000) (citing *Allied Mut. Ins. Co. v. Costello*, 557 N.W.2d 284, 286 (Iowa 1996)). "[W]hen language in an insurance policy is ambiguous, requires interpretation or is susceptible to two equally plausible constructions, [the Iowa Supreme Court] adopt[s] the construction that is most favorable to the insured." *Id.*

Here, the court finds the term "calendar year" and the rest of the contractual limitations provision unambiguous. "The term 'calendar year' has been construed in several cases, though not without exception, to indicate the period from January 1 to December 31, inclusive." E.L. Strobin, 5 A.L.R.3d 584, § 4[d] (1966); *accord Rogers v. Sugar Tree Prods., Inc.*, 7 F.3d 577, 580 (7th Cir. 1993) ("Under [the Age Discrimination in Employment Act], the term 'calendar year' means the period between January and December, rather than any period of twelve consecutive months."), *abrogated on other grounds by Papa v. Katy Indus., Inc.*, 166 F.3d 937 (7th Cir. 1999); *Jensen v. Johnson County Youth Baseball League*, 838 F. Supp. 1437 (D. Kan. 1993) ("The literal meaning of the term 'calendar year' is the period of twelve months between January 1 and December 31."); *Housley v. United States*, No. 91-61-T-23A, 97-1047-CIV-T-23A, 1998 WL 668115, *2 (M.D. Fla. 1998) ("The calendar year is routinely defined as the period of 12 months between January 1 and December 31, inclusive."); *see also McGraw v. Warren County Oil Co.*, 707 F.2d 990, 991 (8th Cir. 1983) (per curiam) (affirming the district court's decision regarding the Age Discrimination in Employment Act and its rejection of the assertion "that 'calendar year' was any period of twelve consecutive calendar months and not the period from January 1 through December 31").

The court finds that the term "calendar year" in the Certificate is unambiguous and means the twelve-month period between January 1 and December 31. The court is constrained by the unambigous language in the Certificate. *See Moncivais v. Farm Bureau*

*Mut. Ins. Co.*, 430 N.W.2d 438, 442 (Iowa 1988) (stating that the court may not "ignore the plain meaning of the policy in order to find ambiguity").

### 2. *Applicability of contractual limitations provision*

Generally, the court would look to state law for the statute of limitations in an ERISA case. *See Weyrauch v. Cigna Life Ins. Co. of New York*, 416 F.3d 717, 720 (8th Cir. 2005) ("Because ERISA does not provide a statute of limitations for actions to recover benefits, we look first to the most analogous state statute of limitations."); *see also Abdel v. U.S. Bancorp*, 457 F.3d 877, 880 (8th Cir. 2006) (stating that "ERISA contains no limitations period," and applying Minnesota law). However, because the Certificate contains an unambiguous limitations provision, that limitations period is applicable, unless it is invalid. *Nicodemus v. Milwaukee Mut. Ins. Co.*, 612 N.W.2d 785, 787 (Iowa 2000).

Parties to a contract may agree to a shortened limitations period to replace a statute of limitations so long as it is reasonable. *See Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947) ("[I]t is well established that, in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period."). "[A] contractual limitations period shorter than that provided by state law may be effective in some cases." *Weyrauch*, 416 F.3d at 720 n.2 (citing *Wilkins v. Hartford Life & Accident Ins. Co.*, 299 F.3d 945, 948 (8th Cir. 2002)).[1] "[A]n

---

[1] ERISA does not contain its own statute of limitations, so the court would look to Iowa law, absent a contractual limitations provision. *See Shaw v. McFarland Clinic, P.C.*, 363 F.3d 744, 747 (8th Cir. 2004) ("Since ERISA does not contain its own statute of limitations governing actions to recover benefits, we must look to Iowa law and borrow the most analogous statute of limitations."); *see also Adamson v. Armco, Inc.*, 44 F.3d 650, 652 (8th Cir. 1995) ("At least in this circuit, it is settled that a claim for ERISA (continued…)

insurer's authority to reduce the limitations period . . . springs from general contract principles, not from any statutory grant of authority." *Hamm*, 612 N.W.2d at 780 (quotation omitted).

A limitations clause in an insurance policy "must provide a reasonable period of time for filing actions to recover under the insurance contract." *Nicodemus*, 612 N.W.2d at 787. "The reasonableness of a contractual limitations period is determined in light of the provisions of the contract and the circumstances of its performance and enforcement." *Id.* (quotations omitted).[2] The Iowa Supreme Court has, for example, upheld as reasonable a one-year contractual limitations clause in homeowner's fire insurance policy.

---

[1](…continued)
benefits is characterized as a contract action for statute of limitations purposes."). There are at least two different statute of limitations applicable to contract actions in Iowa:

> The present difficulty arises from the fact that Iowa law provides two separate statutes of limitation applicable to a contract action, one general and the other specific. As a general matter, a claim brought under ERISA relating to a contract of insurance is governed by a ten-year statute of limitations. *See* Iowa Code § 614.1(5); *see also Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775, 783-84 (Iowa 2000). If, however, the contract arises out of an employment relationship and an employee seeks to recover wages from her employer, it is subject to a two-year statute of limitations. *See* Iowa Code § 614.1(8).

*Shaw*, 363 F.3d at 748. Because the Drapers' claim is clearly for benefits, not wages, if any statutory limitations period is applicable, it is the ten-year statute of limitations in Iowa Code § 614.1(5).

[2] When a contract between the parties contains an invalid limitations provision, the statutory provision applies, by default. *See Faeth v. State Farm Mut. Auto. Ins. Co.*, 707 N.W.2d 328, 335 (Iowa 2005) (holding that the contractual period of limitations was invalid as applied because it was unreasonable, and imposing Iowa's statutory ten-year period of limitations for contracts by default).

11

*Stahl v. Preston Mut. Ins. Ass'n*, 517 N.W.2d 201, 202 (Iowa 1994) (upholding a provision which was modeled after the "standard fire insurance policy form" and provided, in part: "Suit must be brought within one year after the loss."). *Cf. Salisbury v. Art Van Furniture*, 938 F. Supp. 435, 437-38 (W.D. Mich. 1996) (concluding that the six-month contractual limitations provision was a "practical abrogation" of the plaintiff's right to file a claim under the Americans with Disabilities Act, because the act requires a plaintiff to file an administrative complaint and precludes the plaintiff from asserting a cause of action during the administrative review); *Page County v. Fidelity & Deposit Co. of Md.*, 216 N.W. 957, 958 (Iowa 1927) (deeming unreasonable a provision in a depository bond which barred the filing of a suit prior to sixty days after default and subsequent to ninety days after default because the provision came "very close to an abrogation of the right of action"). The Drapers have failed to identify any case in which a two-year contractual limitation period, like the one in the Certificate, has been found to be an "abrogation" of the right to sue.

The court finds the two-year contractual limitations period in the Certificate is reasonable and valid. *Nicodemus*, 612 N.W.2d at 787. Therefore, the contractual limitations period is applicable, rather than any of Iowa's statutes of limitations. The Drapers were required to bring the instant suit by December 31, 2005. Because the suit was not filed until February 10, 2006, the suit is not timely.

Unless Wellmark waived the contractual limitations period, the Motion shall be granted, as to Count 1.

### *3. Waiver*

The Drapers argue that, even if the contractual limitations provision is applicable, Wellmark waived the contractual limitations period when Nicolino's continued to review Laurie Draper's claim in response to Attorney Seidl's July 12, 2005 letter requesting

12

"further review pursuant to ERISA." Wellmark responds that the Drapers have "failed to generate a factual issue for trial concerning an alleged waiver by Wellmark."

Waiver is "'the voluntary or intentional relinquishment of a known right.'" *Scheetz v. IMT Ins. Co.*, 324 N.W.2d 302, 304 (Iowa 1982) (quoting *Travelers Indem. Co. v. Fields*, 317 N.W.2d 176, 186 (Iowa 1982)). Waivers can be expressed or implied. *Id.*; *see also Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Federated Mut. Ins. Co.*, 596 N.W.2d 546, 552 (Iowa 1999) (same). "The issue of waiver is generally one of fact for the jury, in particular where acts and conduct are relied upon as the basis for the waiver." *Scheetz*, 324 N.W.2d at 304.

Here, though, there is no material issue of fact in dispute. The record shows that all of the evidence pertaining to waiver consists of letters and emails between Nicolino and Attorney Seidl. The record consists of no evidence of telephone conversations, in-person conversations or "acts and conduct" which give rise to Count I. The facts are not disputed and the court can determine, as a matter of law, whether Wellmark waived the contractual limitations period.

There is no evidence that Wellmark conducted further "administrative review" of Laurie Draper's claim after Nicolino mailed the September 29, 2003 letter to the Drapers, which notified them that Laurie Draper had exhausted her administrative remedies and could bring a suit under ERISA. The undisputed evidence shows that Wellmark merely provided the Drapers with information about the initial claim determination and administrative review that had been conducted prior to September 29, 2003.

Moreover, as the contractual limitations provision is written, it makes no difference whether Wellmark conducted further review of Laurie Draper's claim after September 29, 2003. As stated herein, the contractual limitation period hinges on the date that Laurie Draper received services, that is, February 10, 2003, not the day the administrative review ended. *See* Defendant's Appendix, at 43 ("No legal or equitable action may be brought

13

. . . more than two years *after the end of the calendar year in which the services . . .were provided.*" (Emphasis added.)). The last day to file a civil action against Wellmark with regard to the services Laurie Draper received on February 10, 2003, was December 31, 2005. Accordingly, Wellmark did not waive the contractual limitations period by communicating with the Drapers by letter and email after the administrative review was exhausted on September 29, 2003. Their February 10, 2006 Complaint was untimely, as a matter of law.

### *4. Conclusion*

The Drapers failed to generate a genuine issue of material fact. Therefore, Wellmark's Motion shall be granted as to Count I.

### *B. Count II - Negligent Misrepresentation Claim*

In Count II, the Drapers allege, in part: "[The Drapers] reasonably relied upon the representations communicated to them by [Wellmark] regarding coverage, which representations were material to [the Drapers'] decision to proceed with treatment with Dr. McCormick." This appears to be a negligent misrepresentation claim, although the Drapers do not name it such.

Wellmark argues it is entitled to summary judgment on the negligent misrepresentation claim both due to the contractual limitations clause and because the common law claim is preempted by ERISA. The Drapers argue that the misrepresentation claim is not preempted by ERISA, because it does not pertain to the improper calculation or processing of benefits.

The court shall hold that, even if Count II is timely, it is preempted by ERISA.

### *1. ERISA preemption*

ERISA preempts state law claims in two ways. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987). First, there is "express" preemption. Section 514(a) of ERISA provides that it "shall supersede any and all State laws insofar as they . . . relate to any

14

Case 1:06-cv-00024-LRR    Document 56    Filed 03/15/07    Page 14 of 19

employee benefit plan . . . ." 29 U.S.C. § 1144(a). This preemption language is "conspicuous for its breadth." *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990); *see also Shea v. Esensten*, 107 F.3d 625 (8th Cir. 1997) ("[T]he language of ERISA's preemption clause sweeps broadly, embracing common law causes of action if they have a connection with or a reference to an ERISA plan."). However, "[t]he mere mention of an ERISA plan in a complaint is not, in and of itself, sufficient to warrant a finding that the state law relates to a plan." *In Home Health, Inc. v. Prudential Ins. Co. of Am.*, 101 F.3d 600, 604 (8th Cir. 1996); *see also Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983) ("Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan."). "In determining whether a state action 'relates to' an employee benefit plan covered by ERISA, [the Eighth Circuit Court of Appeals] employ[s] a two-part test." *Parkman v. Prudential Ins. Co. of Am.*, 439 F.3d 767, 771 (8th Cir. 2006) (citing *Wilson v. Zoellner*, 114 F.3d 713, 715 (8th Cir. 1997)). "A law relates to a covered employee benefit plan for purposes of ERISA if it has (1) 'a connection with' or (2) 'reference to such a plan.'" *Id.* (quoting *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., Inc.*, 519 U.S. 316, 324 (1997)).

Second, there is "conflict" preemption. Section 502(a) of ERISA provides a comprehensive remedial scheme to enforce ERISA's provisions. 29 U.S.C. § 1132(a). This preemption exists when a state law "conflicts with a specific portion of the complex ERISA statute." *Painter v. Golden Rule Ins. Co.*, 121 F.3d 436, 439 (8th Cir. 1997). The Supreme Court has determined that ERISA's remedies preempt "state common law tort and contract actions asserting improper processing of a claim for benefits under an insured employee benefit plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 43 (1987). A state claim that would fall within the scope of ERISA's remedial scheme is preempted as conflicting with the exclusivity of the ERISA's remedial scheme even when the state

15

claim is not preempted by Section 514(a).  *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 n.4 (2004) ("But a state cause of action that provides an alternative remedy to those provided by the ERISA civil enforcement mechanism conflicts with Congress' clear intent to make the ERISA mechanism exclusive."); *see also Painter*, 121 F.3d at 439 ("Thus, if ERISA provides [the plaintiff] remedies for the wrongful denial of . . . benefits, then her state law claims for tortious mishandling of her benefit claim are conflict-preempted.").

Therefore, the court must determine whether the Drapers' misrepresentation claim falls under either of ERISA's two types of preemption.

### 2. *Section 514(a)'s "express" preemption*

As stated above, express preemption can be established two ways: (a) when a state law claim "expressly refers to an ERISA plan" or (b) when a state law claim "has a connection with such a plan." *Shea v. Esensten*, 208 F.3d 712, 717 (8th Cir. 2000) (citing *Cal. Div. Of Labor Standards Enforcement*, 519 U.S. at 324); *see Shaw*, 463 U.S. at 96-97 ("A law [clearly] 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." (footnote omitted)).

#### a. *Express reference*

"The tort of negligent misrepresentation requires proof that the plaintiff justifiably relied on the representation made by the defendant." *Pollmann v. Belle Plaine Livestock Auction, Inc.*, 567 N.W.2d 405, 409-10 (Iowa 1997). The Iowa Supreme Court has stated:

> The elements for the tort of negligent misrepresentation are: (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. (2) . . . [T]he liability stated in Subsection (1) is limited to loss suffered (a) by the person . . . for whose benefit and guidance

16

> he intends to supply the information . . . ; and (b) through
> reliance upon it in a transaction that he intends the information
> to influence . . . .

*Barske v. Rockwell Int'l Corp.*, 514 N.W.2d 917, 924 (Iowa 1994) (first omission in *Barske*, other omissions added); *see also* Iowa Civil Jury Instructions 800.1 (Dec. 2006) (providing the "essentials for recovery" in a negligent misrepresentation case).

Iowa's common law tort of negligent misrepresentation "makes no reference to and functions irrespective of the existence of an ERISA plan." *Wilson*, 114 F.3d at 717 (quotation omitted); *see id.* (examining a claim under Missouri's common law of negligent misrepresentation and stating that the tort action "is not preempted by ERISA on the basis of any reference to ERISA"); *see also Shea*, 208 F.3d at 717-18 (holding that the plaintiff's claim of negligent misrepresentation under Minnesota law was "not subject to ERISA preemption on the basis of an express reference to ERISA"). *Cf. Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 154 F.3d 812, 823 (8th Cir. 1998) (examining the Arkansas Patient Protection Act, finding that the statute "both actually and implicitly" refers to ERISA plans, and holding that the statute was preempted by ERISA). Iowa's common law of negligent misrepresentation does not explicitly reference ERISA plans.

### b.     *Connection with ERISA plan*

"'A law that does not refer to ERISA plans may yet be pre-empted if it has a "connection with" ERISA plans.'" *Shea*, 208 F.3d at 718 (quoting *Cal. Div. of Labor Standards Enforcement*, 519 U.S. at 325). The Eighth Circuit Court of Appeals has stated:

> "This court has held that a variety of tests are helpful when
> determining the effect of state law on an ERISA plan."
> *Johnston v. Paul Revere Life Ins. Co.*, 241 F.3d 623, 630 (8th
> Cir. 2001). One such test was set forth in *Prudential
> Insurance Co. of America v. National Park Medical Center,
> Inc.*, 154 F.3d 812, 822 (8th Cir. 1998): a claim relates to an
> ERISA plan when it "premises a cause of action on the
> existence of an ERISA plan . . . ."

*Howard v. Coventry Health Care, of Iowa, Inc.*, 293 F.3d 442, 446 (8th Cir. 2002) (omission in original).

The heart of the Drapers' claim is that a Wellmark representative told them that the Drapers would only have to pay $3,000 for the February 10, 2003 surgery under the ERISA plan, and then Wellmark only paid $8,747.20, leaving them owing Dr. McCormick $14,112.80. This negligent misrepresentation claim is "dependent upon" proving that Wellmark did not pay the proper amount under the Certificate. *Howard*, 293 F.3d at 446 (citing *Prudential Ins. Co. of Am.*, 154 F.3d at 822); *see Cicio v. Does 1-8*, 321 F.3d 83, 96 (2nd Cir. 2003) ("ERISA preempts state common law claims of fraudulent or negligent misrepresentation when the false representations concern the existence or extent of benefits under an employee benefit plan."), *vacated sub nom. Vitra Healthcare v. Cicio*, 542 U.S. 933 (2004), *aff'd in part and rev'd in part on remand*, *Cicio v. Does 1-8*, 385 F.3d 156, 158 (2d Cir. 2004). Count II "relates to" the extent of benefits under the Certificate, therefore, the state common law claim is preempted under Section 514(a).

The Eighth Circuit Court of Appeals has "held that claims of misconduct against the administrator of an employer's health plan fall comfortably within ERISA's broad preemption provision." *Shea*, 107 F.3d at 627 (citing *Kuhl v. Lincoln Nat'l Health Plan of Kansas City, Inc.*, 999 F.2d 298, 301-04 (8th Cir. 1993)). The Eighth Circuit Court of Appeals has, on numerous occasions, held that a common claim for misrepresentation is preempted by ERISA. *See, e.g.*, *Howe v. Varity Corp.*, 36 F.3d 746, 752-53 (8th Cir. 1994) (affirming the district court's holding that "any claim for fraudulent misrepresentation is preempted by ERISA" (quotation omitted)); *Consol. Beef Indus., Inc. v. New York Life Ins. Co.*, 949 F.2d 960, 964 (8th Cir. 1991) (holding that state law claims of misrepresentation, breach of contract, implied warranties and fraudulent misrepresentation were preempted). *See also Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208 (8th Cir. 1981) (determining that state law claims for improper plan

18

administration are preempted). *But see In Home Health, Inc.*, 101 F.3d at 604 (holding that ERISA did not preempt third-party health care provider's negligent misrepresentation claim against administrator of employee benefit plan where provider was not suing in its capacity as an assignee of an ERISA beneficiary).

The court holds that the Drapers' negligent misrepresentation claim arose from the administration of an ERISA plan. *See Howard*, 293 F.3d at 446 (holding that the plaintiffs' causes of action were preempted because their claims were premised on the existence of an ERISA plan). The claim has a connection with and relates to an ERISA plan and, therefore, ERISA preempts Count II.

### 3. *Section 502(a)'s remedial scheme preemption*

Because the court found that Count II is preempted by Section 514(a) of ERISA, it shall not analyze whether the claim is also preempted by Section 502(a).

## VII. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED:**

(1) Wellmark's Motion for Summary Judgment (docket no. 26) is **GRANTED**;

(2) Count I and Count II of the Drapers' Complaint against Wellmark are **DISMISSED**; and

(3) The Clerk of Court is hereby ordered to assess all costs against Plaintiffs.

**IT IS SO ORDERED.**

DATED this 15th day of March, 2007.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

19

Case 1:06-cv-00024-LRR   Document 56   Filed 03/15/07   Page 19 of 19